# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **IN RE:** | **) Bankruptcy Case No.** 24-20404-CMB |
| | **)** |
| Linda C. Parker, | **) Chapter** 11 |
| | **)** |
| **Debtor.** | **) Document No.** |

_____

## CHAPTER 11 PLAN OF REORGANIZATION
## DATED SEPTEMBER 25, 2024
_____

**DATED:** September 25, 2024      **CALAIARO VALENCIK**

**BY:** /s/ Donald R. Calaiaro_____
**Donald R. Calaiaro, Esq.  PA I.D. No. 27538**

**938 Penn Avenue, Suite 501**
**Pittsburgh, PA 15222-3708**
**Telephone:  (412) 232-0930**
**Facsimile:  (412) 232-3858**
**Email:      dcalaiaro@c-vlaw.com**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | ) **Bankruptcy Case No.** 24-20404-CMB |
| | ) |
| Linda C. Parker, | ) **Chapter** 11 |
| | ) |
| **Debtor.** | ) **Document No.** |

## CHAPTER 11 PLAN OF REORGANIZATION

**Linda C. Parker,** Debtor-In-Possession, proposes the following Plan of Reorganization ("Plan") pursuant to Section 1121(b) and (c) of the Bankruptcy Code ("Code"), 11 U.S.C. § 1121(b), (d).

## ARTICLE 1 - DEFINITIONS

For purposes of this Plan, except as otherwise expressly provided herein or unless the context otherwise requires, the following capitalized terms shall have the meaning set forth below:

**1.1** <u>Adequate Protection Payments</u>: shall mean payments made between the filing date and confirmation date by **Linda C. Parker**, in respect to secured claims.

**1.2** <u>Administrative Claims</u>: shall mean the costs and expenses of administration of this Chapter 11 case allowed under Section 503(b) and entitled to priority under Section 507(a)(1) of the Code.

**1.3** <u>Allowed Claim</u>: shall mean a claim against the Debtor to the extent.

**a.** A proof of such claim was:

**(1)** Timely filed; or

**(2)** Deemed filed pursuant to Section 1111(a) of the Bankruptcy Code; or

**(3)** Filed late with leave of the Bankruptcy Court after notice and opportunity

for hearing given to the Debtor' counsel; and

. **b.**    **(1)**    Which is not a Disputed Claim; or

**(2)**    Which is allowed (and only to the extent allowed) by a Final Order, after objection, if any, and hearing; and

**c.**    **(1)**    With respect to any professionals seeking compensation in connection with this case, when said compensation has been allowed by Order of the Bankruptcy Court after notice and hearing as provided in the Bankruptcy Code.

**1.4**    <u>Litigation</u>: shall mean actions in the United States District Court or Bankruptcy Court for the Western District of Pennsylvania with any caption including Debtor; and any action involving the Debtor in any court of competent jurisdiction whether or not they are pending at the time this Plan is filed.

**1.5**    <u>Bankruptcy Court</u>: shall mean that unit of the United States District Court for the Western District of Pennsylvania known as the United States Bankruptcy Court for the Western District of Pennsylvania located at 54th Floor, U.S. Steel Tower, 600 Grant Street, Pittsburgh, Pennsylvania, 15219, or any Court having jurisdiction to hear and determine appeals therefrom.

**1.6**    <u>Business Day</u>: shall mean between 9:00 a.m. and 5:00 p.m. local Pittsburgh time on every day, except Saturdays, Sundays, and national holidays.

**1.7**    <u>Claim</u>: shall have the meaning set forth in Section 101(4) of the Bankruptcy Code.

**1.8**    <u>Class</u>: shall mean the category of holders of claims or equity interests in such category as provided by Section 1122 of the Bankruptcy Code, each such Class being more fully defined in Article 8 of the Plan.

**1.9**    <u>Collateral</u>: shall mean any property in which the Debtor has or had an interest,

and which secures an allowed claim against the Debtor.

      **1.10**   <u>Confirmation Date</u>: shall mean the date when the clerk of the Bankruptcy Court shall have entered the Confirmation Order on the docket.

      **1.11**   <u>Confirmation Order</u>: shall mean the Order entered by the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

      **1.12**   <u>Convenience Claim</u>:  Any Unsecured Claim that is (I) Allowed for an Amount of $2,500.00 or less or (ii) is Allowed in an amount greater than $2,500.00, but which is reduced to $2,500.00 by election of the Holder thereof pursuant to such Holder's Ballot. In no event shall any Convenience Claim exceed $2,500.00 for purposes of allowance, treatment, or distribution under this Plan.

      **1.13**   <u>Creditor</u>: shall mean any person having a claim against the Debtor that arose on or before the filing date or a claim against the Debtor's estate of a kind specified in Section 502(g), (h) or (I) of the Code.

      **1.14**   <u>Disclosure Statement</u>: shall mean the Disclosure Statement of the Debtor and filed with and approved by the Court pursuant to Section 1125 of the Code.

      **1.15**   <u>Disputed Claims</u>: shall mean alleged claims against or equity interests in the Debtor listed as disputed, contingent or unliquidated on the Debtor's schedules or amended schedules for which a timely proof of claim is filed, or to which an objection has been timely filed within thirty (30) days after the confirmation date by a party in interest and which objection is not the subject of a Final Order or has not been withdrawn.

      **1.16**   <u>Distribution Date</u> and <u>Effective Date of the Plan</u>: shall mean for each allowed claim which is to receive cash under the Plan, (**a**) the thirty-first (31st) business day after the Confirmation Order becomes a Final Order. On this date, the first distribution will occur to

undisputed, allowed secured and priority claims, unless otherwise set forth herein; or **(b)** if a claim is not allowed by the prior date, the sixtieth (60th) business day after the date on which a disputed claim is finally adjudicated and no further appeal can be taken.

1.17    <u>Exemption Rights of the Debtor</u>: shall mean all rights of the Debtor under 11 U.S.C. § 522 (C) and (D) as claimed by the Debtor in the bankruptcy Schedule C and any amendments thereto, which have been allowed in accordance with the Bankruptcy Rules.

1.18    <u>Filing Date</u>: shall mean February 21, 2024, the date on which **Linda C. Parker** filed his petition for reorganization with the Bankruptcy Court.

1.19    <u>Final Order</u>: shall mean an order, judgment or decree of the Bankruptcy Court as to which **(a)** any appeal that has been timely taken has been finally determined or dismissed; **(b)** the time for appeal has expired and no appeal has been timely taken in accordance with Rule 8002 of the Rules of Bankruptcy Procedure and any applicable local procedural rule; or **(c)** an appeal has been timely taken, but such Order has not been stayed by appropriate cash bond or equivalent under Rule 8005 of the Rules of Bankruptcy Procedure.

1.20    <u>Plan</u>: shall mean this Plan of Reorganization dated **September 25, 2024**, as the same may be amended or modified from time to time in accordance with the provisions of this Plan and Section 1127 of the Code, all addenda, exhibits, schedules, releases and other attachments hereto, all of which are incorporated herein by reference as though fully set forth herein.

1.21    <u>Priority Claim</u>: shall mean any claim entitled to priority pursuant to Section 507(a) (1) [Administrative] of the Code to the extent it is an allowed claim; except for priority tax claims.

**1.22**   <u>Priority Tax Claim</u>: shall mean any claim entitled to priority pursuant to Section 507(a) (7) of the Code to the extent it is an allowed claim.

**1.23**   <u>Tax Attributes</u>: shall mean any right or claim for credits that the Debtor has as of the date of confirmation of the Plan.

**1.24**   <u>Proponent of this Plan</u>: shall mean **Linda C. Parker.**

**1.25**   <u>Schedules</u>: shall mean the schedules of assets and liabilities filed by **Linda C. Parker** with the Bankruptcy Court as required by Section 521 of the Code, and any amendments thereto as allowed by the Bankruptcy Court.

**1.26**   <u>Secured Claim</u>: shall mean an allowed claim in respect of which a security interest is held in or against any property of the Debtor's estate, to the extent of the value of such creditor's interest in the estate's interest in such property; and to the extent the claim is perfected against a trustee under 11 U.S.C. § 544.  If the value of such creditor's interest is less than the amount of the allowed claim held by it, then such creditor shall hold an unsecured claim for the deficiency amount; if the creditor's claimed security is not perfected, it will have an unsecured claim; but only to the extent the creditor has filed a claim.

**1.27**   <u>Secured Creditor</u>: shall mean any person, which holds a perfected secured claim.

**1.28**   <u>Security Interest</u>: shall mean a lien as such term is defined in Section 101(33) of the Code on any of the property of the Debtor's estate.

**1.29**   <u>Unsecured Claim</u>: shall mean any claim other than an administrative claim; secured claim or a priority claim to the extent it is an allowed claim.

**1.30**   <u>Gender and Number</u>: when used herein, words importing any gender may be applied to and include all persons; words importing the plural number may be applied to and

mean a single person or thing, and words importing the singular number may be applied to and mean more than single person or thing.

**1.31** <u>General Rule of Interpretation</u>: unless otherwise defined herein, all terms used in this Plan shall have the meanings set forth in the Bankruptcy Code.

## ARTICLE 2 - CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS INTO CLASSES

**2.1**     <u>Class 1</u>, <u>Administrative Claims</u>                                    ***[Unimpaired]***

**2.2**     <u>Class 2</u>, <u>PNC Bank-</u>1st mortgage on 626 James Drive,
            Belle Vernon, PA                                                      ***Impaired]***

**2.3**     <u>Class 3</u>, <u>PNC Bank</u>, 1st mortgage on 129 Landmark Lane,
            Belle Vernon, PA                                                      ***[Impaired]***

**2.4**     <u>Class 4</u>, <u>Internal Revenue Service</u>—secured portion            ***[Impaired]***

**2.5**     <u>Class 5</u>, <u>Unsecured Creditors</u>                                ***[Impaired]***

## ARTICLE 3 - DESIGNATION OF CLASSES

**3.1**     <u>Class 1</u> shall consist of fees to the U.S. Trustee; the Clerk of Courts and any professional's fees which are entitled to priority under 11 U.S.C. § 507(a) (1). These shall include the following:

(a)     Any unpaid utility bills for administrative service to the Debtor including Duquesne light company

(b)     Attorneys for Debtor, Calaiaro Valencik

(c)     Accountant for the Debtor. 11 U.S.C. § 503 (b) (4).

This Class shall also include expenses incurred during the Administration of this case:

(d)      All U.S. Trustee's fees and Clerk of Bankruptcy Court charges.

(e)      All professional fees are subject to the Bankruptcy Court's approval under

Section 330(a) (1) of the Bankruptcy Code and Bankruptcy Rule 2016(a); and only to the extent professionals preserved the estate.

**3.2**   <u>Class 2</u> shall consist of **PNC Bank**, the holder of the first mortgage on the real property located at 626 James Drive, Belle Vernon, PA 15012. PNC Bank properly recorded on the mortgage as having a first lien on the property. At the time of filing, PNC Bank was owed approximately $ 216,627.20they have filed Proof of Claim No. 6. They assert an arrearage of $1,518.65. The Debtor has obtained a loan modification through the Loan Modification Program. The Debtor is current under this modification.

**3.3**   <u>Class 3</u> shall consist of **PNC Bank**, the holder of the mortgage on the Debtor's commercial property located at 129 Landmark Lane, Belle Vernon, PA 15012. The loan dated July 23, 2004, was in the face amount to of $300,000.00. The loan maturity date is July 23, 2019. The mortgage was recorded at Instrument No. 2004072344890. This loan was modified by a forbearance agreement on November 31, 2014. As of December 8, 2016, the loan was in the principal amount of $300.000.00 and interest and late charges in the approximate amount of $69,000.00. This mortgage was previously modified to a fixed rate of 5%.  PNC bank has filed a Proof of Claim # 5 in this case for $289.241.29. The Debtor has paid $1,800.00 adequate protection payments to PNC since the case was filed. The Debtor has the right to modify this secured obligation under Chapter 11 of the Bankruptcy Code

**3.4**   <u>Class 4</u> shall consist of Priority secured and Priority unsecured claim of the Internal Revenue Service and the Commonwealth of Pennsylvania, Department of Revenue.

A.    **Internal Revenue Service**, the holder of a Federal Tax Lien, a second lien on the Debtor's residence located at 129 Landmark Lane, Belle Vernon, PA 15012. The tax claim arises out of a civil penalty assessment against Linda Parker as president of Parker Precision Molding, Inc. the liability is for unpaid 941 tax deductions due to the IRS which were not paid by Parker Precision Molding, Inc. the tax claims arose in 2011-2016. This claim is partially secured by a filed Federal Tax lien, filed February 24, 2015, recorded at 28175. The secured claim is $6,091.26 and the unsecured priority claim is for $34,982.54. Parker Precision Molding, Inc. is also liable for this Debt. There is a general unsecured claim for 686.98. The IRS filed claim #3.

**B.    Commonwealth of Pennsylvania, Department of Revenue. The** Commonwealth of Pennsylvania, Department of Revenue filed claim #2 in the amount of 1,505.63 as an unsecured priority claim for personal income taxes for 2020.

**3.5**    Class 5 shall consist of **General Unsecured Creditors**. This Class is made up of all creditors who have unsecured claims against Debtor. This Class shall consist of four claims in the total amount of $7,740.75, which shall be paid in full. These claims shall not be entitled to interest. The Chart below indicates the members of Class 5.

| Creditor | Class | Total Amount Owed | Percent of Dividend |
|---|---|---|---|
| Belfor Restoration -**unfiled - disputed** | 5 | $   300.00 | 100 |
| Peoples Gas POC #1 | 5 | $ 2,671.71 | 100 |
| McClure & Wolf Wayne Port, Esquire – **unfiled- disputed** | 5 | $ 6,994.75 | 100 |
| IRS – POC #3 | 5 | $ 686.98. | 100 |
| Capital One- POC #4 | 5 | $ 331.79 | 100 |
| Pa DOR-POC # 2 | 5 | $ 1,505.63 | 100 |
| TOTAL | | | |

## ARTICLE 4 - IMPAIRMENT

The following Classes are <u>not</u> impaired under this Plan:

**Class 1**      Unimpaired

The following Classes are impaired under the Plan:

**Class 2**      Impaired
**Class 3**      Impaired
**Class 4**      Impaired
**Class 5**      Impaired

## ARTICLE 5 - MEANS FOR IMPLEMENTATION OF THE PLAN

**5.1**      The Plan is to be implemented by the reorganized Debtor through her employment and all her income from; all businesses of the Debtor, this includes Parker Precision Molding, Inc., and the rental of 626 James Drive Belle Vernon. The income of the Debtor will also include her social security benefits beginning in 2021.The Plan proponent in the Chapter 11 case will continue to work at her job and she will dedicate a sufficient portion of her incomes to fund this Plan that is an amount of his disposable income for the next five (5) years in order to comply with 11 U.S.C. § 1129 (a) (15).  Her salary at Parker Precision Molding, Inc. is being increased to $ 2,500.00 per month.

The Debtor owns a 100% interest in Parker Precision Molding. This entity is operating and provides employment to the Debtor; The Debtor intends to retain her interest to preserve her position and salary derived therefrom.

The Debtor owns a 100% interest in Widget Works. This entity is operating and provides income to the Debtor. The Debtor intends to retain her interest to preserve his position and income derived therefrom.

**5.2**    Litigation Necessary or Possible to Consummate Plan.

(A) Adversary complaints to determine secured status of the following:

1. The allowed and secured Claims of PNC bank.

(B) Objection to any claims of creditors who do not have valid claims against the Debtor. Objections to claims of creditors with disputes as to the amount(s) due.

(C) Any Chapter 5 Actions.

(D) Any actions to enforce the Plan.

**5.3**    Escrow of any Disputed Claim.

(A) At the time of distribution under the Plan, the Debtor shall pay into an escrow account any payment(s) for disputed creditors until such time as a final order allowing that claim is entered.

(B) The Debtor may escrow any payment to any creditor if there is a possible claim or setoff that may be asserted against that creditor.

(C) The escrow account shall bear interest. If the disputed creditor is unsecured, the interest shall be the property of the Debtor. If the creditor is secured, the interest shall be the property of the secured creditor.

**5.4**    Miscellaneous.

(A) The Debtor shall have the exclusive right to negotiate with any administrative claimants, any secured creditors or any disputed creditor to discount or settle any dispute. The Debtor and the Disbursing Agent will not need Court approval to discount or settle any claim(s), provided the creditor agrees to the alternative treatment that discounts or settles its claim(s)

(B)  All causes of action, all avoiding powers, and all choses in action of any type

which were the property of the Debtor at the time of the commencement of this case shall remain the property of the Debtor under this Plan.

(C) All available funds for disbursement to Class 5 will be made on a monthly basis and distributions to Class 5 claims will be distributed on a quarterly basis.

## ARTICLE 6 - PROVISIONS FOR CLAIMS AND EQUITY SECURITY INTERESTS GENERALLY

**6.1**    At the time the Confirmation Order becomes a Final Order, the Debtor and the reorganized Debtor shall have their relationships modified and superseded by the terms of the Plan, but if the Debtor has already entered into a Settlement Agreement with a creditor, that agreement is binding.

The reorganized Debtor shall be deemed to have the benefits of Code Section 1141(c), and the Debtor shall be fully discharged and released by the effect of the confirmed Plan, in accordance with the Bankruptcy Code.

**6.2**    In the event that the claim of any creditor is contingent, unliquidated or subject to dispute on the confirmation date, the Debtor or the Creditor may, in their sole discretion, request the Bankruptcy Court to estimate for the purpose of allowance under Section 502 of the Code, as soon as practicable after the confirmation date, **(a)** any disputed, contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of this Chapter 11 case, and **(b)** any right to payment arising from a right to an equitable remedy for breach of performance.

Any disputed creditor, who has not sought the right to vote an estimated amount prior to a hearing on the confirmation, shall not be entitled to vote upon this Plan of Reorganization.

**6.3** **Post confirmation Injunction**      All entities that hold a claim against the Debtor are enjoined from taking any actions on account of any such claims, debts of liabilities:

A.      Commencing or continuing in any manner any action or other proceedings against the Reorganized Debtor, Debtor's Estate, or any property included in that estate, unless there has been a material default under the confirmed Plan.

B.      Enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree or order against Reorganized Debtor, Debtor's Estate or any property included in that estate, unless there has been a material default under the confirmed Plan.

C.      Creating, perfecting, or enforcing any lien or encumbrance Reorganized Debtor, Debtor's Estate or any property included in that estate, unless there has been a material default under the confirmed Plan.

D.      Taking any action which is inconsistent with the confirmed Plan.

## ARTICLE 7 - TREATMENT UNDER THE PLAN
## AND PROVISION FOR PAYMENT

**7.1** **Class 1, Administrative Claims**. The Class 1 claims, to the extent they are an allowed priority claim, shall be paid their principal claim in full without interest on or before the distribution date by a cash payment to the holder of such a claim except as provided below or as otherwise agreed by each member of the Class of persons in this Class. Professional persons who are in Class 1 and whose claims have been finally approved and allowed by the Court pursuant to Code Section 330 or 503 shall be paid on the closing date. They shall be paid in full on the Plan Effective Date or in monthly installments in an amount that has been agreed to by the individual professional person with the Debtor.

**7.2** **Class 2, PNC Bank**. The Class 2 claim of PNC Bank, the holder of a mortgage secured against her residence, will be paid in full over time. The claim of PNC Bank will be paid in accordance with the note and security agreement unless a mortgage modification is obtained through Loss Mitigation Program. The arrears of $3,855.41will be paid over 60 months following confirmation if no loan modification agreement is reached. The lien shall be retained after confirmation. **The terms of the loan modification are incorporated into the Plan.**

**7.2.1  All** creditors must give notice of any default to the Debtor and their counsel by written notice specifying the alleged default and the action needed to cure the default. The Debtor shall have (30) thirty days to cure any default after receipt of that notice. No creditor may enforce any right or enforce any lien until this notice and opportunity to cure have been given. All notices of default must be mailed to the Debtor at their last known address; AND a copy of that notice shall be mailed to Donald R. Calaiaro at 938 Penn Avenue, Suite 501, Pittsburgh, PA 15222. All notices under this paragraph must be sent by certified mail, return receipt requested to be effective. The terms of these notice rights must be strictly enforced as a condition precedent to any rights under this Plan.

**7.3** **Class 3, PNC Bank**. PNC Bank holds a first mortgage on 129 Landmark Lane Belle Vernon, PA 15012. The Debtor uses this property as a commercial property and it is used by Parker Precision Molding, Inc.

Participation in this Class by the Class 3 lienholder shall be limited to include principal and interest and allowed costs, which are secured by actual value.

PNC Bank shall be treated pursuant to the provisions of Section 1129 (b) (2) (A) of the Bankruptcy Code as follows:

(A)    This secured creditor will realize the indubitable equivalent of its allowed claim on the date of distribution as provided in the Plan.

(B)    This secured creditor will receive treatment of its claim in a manner consistent with the Bankruptcy Code:

   (1)    It will receive its unpaid principal, interest costs as allowed by the Bankruptcy Code, to the extent it is an allowed claim after modification and deduction for all credits, as set forth below.

   (2)    The counsel fees shall not be allowed unless, the Debtor fails to pay off the balance on the maturity date. If the Debtor fails to pay off the balance of the loan by the maturity date, PNC may include those counsel fees thereafter.

   (3)    It is impaired under this Plan.

(C)    This secured creditor has a mortgage lien; such lien will be retained, as to the Reorganized Debtor, and will be retained, as modified, until this secured Creditor is paid in full under this Plan.

(D)    The debt will be modified and restructured under this Plan. The loan maturity date will be extended to 7 years after the confirmation date.

(E)    The balance due, as of the confirmation date, will be reamortized by the Debtor over 20 years. The loan will mature, and the entire unpaid balance under this Plan will be due on August 31, 2031.

(F)    The modified secured claim will accrue post-confirmation interest at the previously modified fixed rate of 5%; and

(G)    Any prepayment penalty will be waived.

(H)    The Debtor shall make monthly payments towards the principal and interest due in the minimum amount of $ 2,200.00 per month. PNC Bank shall credit any payments, after application to interest, to the principal amount(s) due.

(I)    The Debtor shall make additional principal payments of $ 1,000.00 per month beginning on month sixty-one, after the confirmation date and until the loan is paid in full.

(J)    The Debtor shall pay all future real estate taxes as they become due.

(K)    The Debtor shall maintain adequate insurance coverage on this property and name PNC Bank as a loss payee under the Policy.

**Provisions to be included, IF PNC Accepts this Plan And Votes Affirmatively in Favor of this Plan.**

   (L)  As consideration for PNC's Consent to this plan, the Debtor will grant PNC commercial a second lien on her residence as additional collateral provided that PNC accepts the treatment in this Plan. This Option can only be exercised by PNC Voting affirmatively in favor of this plan.

   (M)  As consideration for PNC's Consent to this plan, the Debtor will agree to reduce the loan maturity date to 6 years after the confirmation of this Plan.

7.3.1   This creditor must give notice of any default to the Debtor and their counsel by written notice specifying the alleged default and the action needed to cure the default. The Debtor shall have (30) thirty days to cure any default after receipt of that notice. No creditor may enforce any right or enforce any lien until this notice and opportunity to cure have been given. All notices of default must be mailed to the Debtor at their last known address; AND a copy of that notice shall be mailed to Donald R. Calaiaro at 938 Penn Avenue, Suite 501, Pittsburgh, PA 15222. All notices under this paragraph must be sent by certified mail, return receipt requested to be effective. The terms of these notice rights must be strictly enforced as a condition precedent to any rights under this Plan.

**7.4   Class 4, Secured and Priority Tax Claims.** Pursuant to Code Section 1129(a)(9)(c), the Class 4 claims shall be paid in full over a period of five years following the Plan confirmation. The first payment will be made 30 days after the plan confirmation date. The Debtor will make sixty equal payments to the IRS. They will be paid over five years with the statutory rate of post confirmation interest. The Debtor will make sixty equal payments to the taxing bodies. The lien(s) of the taxing bodies will be retained until they have been paid in full. Notwithstanding the above provisions or the confirmation of this Plan of

Reorganization, the Debtor reserves her rights under section 505 of the Bankruptcy Code to seek a determination of the validity, secured status or priority of any tax claim filed a pre-petition claim or as an administrative tax claim.

7.4.1 The Pennsylvania Department of Revenue's secured and priority claims are being paid in full under this Plan.

The Pennsylvania Department of Revenue's shall not collect the sums in Class 4 against Parker Precision Molding, Inc. for as long as the Debtor makes the plan payments in a timely manner. The disruption of the demand for payment of the entire amounts on Parker Precision Molding, Inc. could affect the stability of the Debtor and her ability to fund the plan. The confirmation of this plan shall constitute a limited injunction against the IRS which shall remain in force for as long as the Debtor does not default on payments to the IRS under this plan.

**7.5**  **Class 5**, **General Unsecured Creditors**. The General Unsecured Creditors of **Linda Parker** will be paid a fixed dividend of $7,740.75 over five years following the Plan Effective Date. This Class shall not be entitled to interest on their claims. The Class 5 creditors will be paid the sum of $200.00 per month for 39 months following the Plan Effective Date. There will be sixty monthly payments totaling $7,740.75. This will produce a dividend to Class 5 of 100%.

**7.5.1**  Disbursements to Class (5). The Debtor shall disburse the payments to Class 5 on a monthly basis. The Debtor shall disburse all funds to creditors in Class 5 on a pro-rata basis.

**7.5.2**  Disputed claims in Class (5). The Debtor shall escrow any funds due to a disputed claimant in Class 5 until their claim has been finally adjudicated or approved by the

Debtor. The Debtor shall have the exclusive right to dispute any claim or enter into any settlement after the entry of a final decree. The Debtor shall have the right to negotiate and settle and compromise any claim by offering a prepayment of their projected dividend in exchange for a discount. The Debtor may only offer discounted settlements from excess funds and not from the required monthly payment.

**7.5.3** The creditors in class 5 must give notice of any default to the Debtor and their counsel by written notice specifying the alleged default and the action needed to cure the default. The Debtor shall have (30) thirty days to cure any default after receipt of that notice. No creditor may enforce any right or enforce any lien until this notice and opportunity to cure have been given. All notices of default must be mailed to the Debtor at their last known address; AND a copy of that notice shall be mailed to Donald R. Calaiaro at 938 Penn Avenue, Suite 501, Pittsburgh, PA 15222. All notices under this paragraph must be sent by certified mail, return receipt requested to be effective. The terms of these notice rights must be strictly enforced as a condition precedent to any rights under this Plan.

## ARTICLE 8 - RETENTION OF JURISDICTION

**8.1** The Bankruptcy Court shall, after the confirmation date and until final consummation, be entitled to exercise exclusive jurisdiction over the following matters:

(a) To consider any modification of this Plan pursuant to Section 1127 of the Code.

(b) To determine the allowance of all claims against the Debtor pursuant to Section 502 of the Code.

(c) To hear and determine any objections filed within thirty (30) days after confirmation date to the allowance of any claim.

(d) To hear and determine any adversary proceeding or contested matter, controversy, suit, or dispute over which the Bankruptcy Court has jurisdiction under 28 U.S.C. Sections 157 and 1334.

(e)     To hear and determine any issues with respect to the Debtor's settlement with a creditor if the creditor requests court intervention.

(f)     To hear and determine all controversies, suits and disputes that may arise in connection with the interpretation or enforcement of the Plan.

(g)     To issue such orders as may be necessary for the administration and/or consummation of this Plan, including complaints to determine secured claims.

(h)     To set and determine all professional fees and other costs of administration in this Chapter 11 cases.

(i)      For such other purposes as may be set forth in the Confirmation Order; and

(j)     This Court may retain Jurisdiction over specifically enumerated matters even though a final decree may be entered.

## ARTICLE 9 - GENERAL PROVISIONS

**9.1**    Amendments. The Plan Proponent may amend this Plan at any time prior to the confirmation date, provided there is notice and an objection period provided to the Debtor's creditors and thereafter as provided in Section 1127 of the Bankruptcy Code.

**9.2**    Plan Controls. In the event, and to the extent that any provision of the Plan is inconsistent with the provisions of the Disclosure Statement, the provisions of the Plan shall control.

**9.3**    Headings. The headings included in this Plan are for the sake of convenience and reference only and shall not constitute part of this Plan for any other purpose.

**9.4**    Interest. Except as specifically set forth in the Plan or in any Final Order of the Court entered during this Chapter 11 case, interest shall be deemed not to have accrued with respect to any claim since the filing date and no payment of interest will be made or allowed pursuant to the Plan.

**9.5**    This Plan contemplates that the case will be closed, and a final decree will be

entered as soon as all the following have occurred:

    (a)    All fee applications have been filed and approved. No fee application shall be allowed unless they have been filed prior to forty-five (45) days after the Order of Confirmation is entered.

    (b)    All objections to claims and adversary actions are filed and finally resolved.

    (c)    The Debtor has complied with the Post-Confirmation Order.

**9.6**    *The rights of Class 5 to payments under this Plan by the Debtor will be an unsecured obligation of the reorganized Debtor.*

**9.7**    Upon the entry of the Final Decree, the representation of the Debtor by Calaiaro Valencik shall terminate. Calaiaro Valencik shall have no further obligation to provide reports or information to any parties in interest after the entry of the Final Decree. Calaiaro Valencik or Donald R. Calaiaro may enter into any subsequent representation of Linda Parker as the parties shall agree upon.

## <u>ARTICLE 10 - AMENDMENT</u>

**10.1**    The proponent of the Plan reserves the right to amend this Plan prior to confirmation.

**DATED:** September 25, 2024        **CALAIARO VALENCIK**

                                    **BY:** <u>/s/ Donald R. Calaiaro</u>
                                      **Donald R. Calaiaro, Esq.  PA I.D. No. 27538**

                                      **938 Penn Avenue, Suite 501**
                                      **Pittsburgh, PA 15222-3708**
                                      **Telephone:  (412) 232-0930**
                                      **Facsimile:   (412) 232-3858**
                                      **Email:      dcalaiaro@c-vlaw.com**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **IN RE:** | ) **Bankruptcy Case No.** 24-20404-CMB |
| | ) |
| Linda C. Parker, | ) **Chapter** 11 |
| | ) |
| **Debtor.** | ) **Document No.** |

**CERTIFICATE OF SERVICE OF CHAPTER 11 PLAN
OF REORGANIZATION DATED September 25, 2024**

   I certify under penalty of perjury that I served the above captioned pleading on the parties at the addresses specified below or on the attached list on September 25, 2024.

**Service by First-Class Mail**:
Linda C. Parker, 626 James Drive, Belle Vernon, PA 15012

**Service by NEF**:
Kate M. Bradley on behalf of U.S. Trustee Office of the United States Trustee
Kate.M.Bradley@usdoj.gov

   The type(s) of service made on the parties (first-class mail, electronic notification, hand delivery, or another type of service) was: First-Class Mail or electronic notification.

   If more than one method of service was employed, this certificate of service groups the parties by the type of service. For example, the names and addresses of parties served by electronic notice will be listed under the heading "Service by Electronic Notification," and those served by mail will be listed under the heading "Service by First-Class Mail."

**EXECUTED ON:** September 25, 2024  **CALAIARO VALENCIK**

        **BY:** /s/ Donald R. Calaiaro
        **Donald R. Calaiaro, Esq.  PA I.D. No. 27538**

        **938 Penn Avenue, Suite 501**
        **Pittsburgh, PA 15222-3708**
        **Telephone:  (412) 232-0930**
        **Facsimile:   (412) 232-3858**
        **Email:  dcalaiaro@c-vlaw.com**